UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANESTHESIA ASSOCIATES OF ANN ARBOR PLLC,**<br><br>Plaintiff,<br><br>v.<br><br>**BLUE CROSS BLUE SHIELD OF MICHIGAN,**<br><br>Defendant. | 2:20-CV-12916-TGB-APP<br><br>**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**(ECF NO. 57)** |

Defendant Blue Cross Blue Shield of Michigan ("BCBS-MI") has filed a motion seeking to dismiss the state law claims in Plaintiff Anesthesia Associates of Ann Arbor's ("A4") amended complaint. ECF No. 57. Specifically, BCBS-MI seeks dismissal of A4's claims of tortious interference with contract; civil conspiracy to commit tortious interference with contract; unlawful and malicious threats; duress; and injunctive relief—all arising under Michigan law. For consistency, BCBS-MI also requests that the factual allegations pertaining to those state law claims be stricken from the amended complaint. Having carefully reviewed A4's amended complaint (ECF No. 53) and the parties' briefing, the Court now declines to exercise supplemental jurisdiction over the state law claims alleged in the amended complaint. Consequently, for the

1

reasons explained below, BCBS-MI's partial motion to dismiss is **GRANTED.** BCBS-MI's motion to strike is also **GRANTED**.

## I.   BACKGROUND

On September 28, 2022, the Court issued a memorandum Order denying in part and granting in part A4's motion for leave to file an amended complaint. As discussed in detail in that Order, A4's proposed amended complaint alleged two horizontal conspiracies: (1) the "Blues Conspiracy"; and (2) the "Hospital Conspiracy." Order, ECF No. 52, PageID.1890–92. The nationwide Blues Conspiracy relates to BCBS-MI's agreements restricting competition among the other "Blues" companies, i.e., commercial health insurers operating in the United States market who are licensed to use the Blue Cross Blue Shield brand (for example, Blue Cross Blue Shield of Wisconsin). *Id.* at PageID.1891. The more local Hospital Conspiracy involved BCBS-MI's uniform rate agreements with Michigan hospitals that capped reimbursement fees paid to A4. *Id.* at PageID.1890–91.

In its Order, the Court permitted A4 to amend its complaint to attempt to establish seller-based antitrust standing from plausibly alleging the existence of the nationwide Blues Conspiracy. *Id.* at PageID.1909. But as to the Hospital Conspiracy allegations, the Court denied leave to amend as futile because A4 failed to plausibly allege the existence of a horizontal conspiracy between the Michigan hospitals. *Id.* at PageID.1897.

Because the Court did not dismiss A4's federal claims in full, but without addressing the issue in detail, the Court noted that it retained supplemental jurisdiction over A4's state law claims under 28 U.S.C. § 1367. *Id.* at PageID.1910. BCBS-MI now argues that A4's state law claims lack a sufficient factual connection to the Blues Conspiracy—the only surviving theory underlying A4's federal antitrust claims. Consequently, BCBS-MI contends that the Court lacks supplemental jurisdiction over A4's state law claims, which are solely connected to the now-dismissed Hospital Conspiracy theory.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In general, supplemental jurisdiction requires the federal and state law claims to be "derive[d] from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). And while § 1367(a) presents "a sweeping grant of supplemental authority," *Olden v. LaFarge Corp.*, 383 F.3d 495, 504 (6th Cir. 2004), a court retains discretion to decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254

(6th Cir. 1996) ("A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.").

### III.  DISCUSSION

As the Supreme Court has emphasized, "the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *Gibbs*, 383 U.S. at 727. Now that the record provides a clearer picture of how A4 intends to litigate its state law claims, the Court concludes that these claims are not sufficiently related to the factual basis of the Blues Conspiracy. While A4 is correct that federal courts hearing federal antitrust claims may exercise supplemental jurisdiction over seemingly disparate state law claims, those state law claims must be "an outgrowth of the alleged conspiracy . . . [that] forms the basis of the Sherman Act claim." *Tacker v. Wilson*, 830 F. Supp. 422, 431 (W.D. Tenn. 1993).

But here, A4's state law claims are an outgrowth of the now-dismissed Hospital Conspiracy claim, not the Blues Conspiracy. For example, A4's tortious interference with contract and civil conspiracy to commit tortious interference with contract claims center around BCBS-MI's alleged interference with A4's contracts with Michigan hospitals, and BCBS-MI's alleged concerted action with Michigan hospitals. Amended Complaint, ECF No. 53, PageID.1996, ¶ 188. Similarly, A4's unlawful and malicious threats claim relates to BCBS-MI's alleged threats to Michigan hospitals that led to a purported boycott by the

hospitals of A4. *Id.* at PageID.1996–97, ¶¶ 191, 195–96. In addition, A4's duress claim involves BCBS-MI's alleged breaches of contract with A4's independent contractors, which compelled A4 to return to BCBS-MI's network. *Id.* at PageID.1998–99, ¶¶ 199–205.

While the Hospital Conspiracy involved allegations about BCBS-MI's conduct toward Michigan hospitals and A4's contractual relationships with independent contractors and Michigan hospitals—factual claims that are central to the state law claims—the Blues Conspiracy does not. The Blues Conspiracy is based on the allegedly anticompetitive effects of BCBS-MI's agreements with other Blues across the country. And the Blues Conspiracy does not implicate BCBS-MI's direct contractual relationships with Michigan hospitals or A4, Michigan hospitals' conduct toward A4, nor their relationships with each other. *See Burt v. Blue Shield of Sw. Ohio*, 591 F. Supp. 755, 764 (S.D. Ohio 1984) (declining supplemental jurisdiction over state law claim where the operative facts of the federal antitrust claim "will be different" than those necessary to prove the state claim).

Furthermore, even if A4's state law claims had a sufficient factual relationship to the Blues Conspiracy, the Court has discretion to decline supplemental jurisdiction where the state law claims will "substantially predominate[] over" the federal claims. 28 U.S.C. § 1367(c)(2); *see also Gaines v. Blue Cross Blue Shield of Mich.*, 261 F. Supp. 2d 900, 906 (E.D. Mich. 2003) (declining to exercise supplemental jurisdiction where the

plaintiff's "state law claims may substantially expand the scope of this case beyond that necessary and relevant to" the plaintiff's federal claim). Relatedly, where "[f]ederal and state law each have a different focus," exercising supplemental jurisdiction "prolongs pre-trial practice, complicates the trial, lengthens the jury instructions, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees." *Frankel v. Detroit Med. Ctr.*, 409 F. Supp. 2d 833, 835 (E.D. Mich. 2005).

Ultimately, "the values of judicial economy, convenience, fairness, and comity," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988), favor dismissing A4's state law claims. Given that the factual bases of A4's state law claims differ significantly from the Blues Conspiracy federal antitrust claim, the Court is concerned that the Blues Conspiracy will become "only an appendage" to A4's state claims. *Gibbs*, 383 U.S. at 727. Moreover, A4 has not argued that it would be prejudiced by dismissal of its state claims at this relatively early stage of litigation, nor has the Court entertained the merits of the state law claims. As such, the Court concludes that dismissing A4's state law claims without prejudice is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is **GRANTED**. Defendant's motion to strike is also **GRANTED**. Therefore,

without addressing the merits of Plaintiff's state law claims, the Court **DISMISSES** Plaintiff's state law claims without prejudice.

The allegations underlying Plaintiff's state law claims (ECF No. 53, ¶¶ 1(b); 28–44, 55 (portion referencing this Court's supplemental jurisdiction under 28 U.S.C. § 1367); 100–34, 176 (portions referencing BCBS-MI's tortious conduct); 178 (portion referencing BCBS-MI's interference with A4's relationships with Michigan hospitals); 179 (portion referencing BCBS-MI's tortious conduct)); and the causes of action raising Plaintiff's state law claims (ECF No. 53, ¶¶ 180–206; 231–33) are **STRICKEN**.

**IT IS SO ORDERED.**

Dated: December 29, 2022    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE